•

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CHRIS CARTER,

        Plaintiff,

                                       Case No. 2:17-cv-00888-JO

   v.

                                       OPINION AND ORDER

C/O McNITT #6933, et al.,

        Defendants.

JONES, Judge:

      Pro se plaintiff Chris Carter brings this civil rights action under 42 U.S.C. § 1983 against twenty employees of the Oregon Department of Corrections (ODOC), alleging that the defendants violated his constitutional rights while he was in custody at the Snake River Correctional Institution (Snake River) in Ontario, Oregon. Plaintiff is currently in ODOC custody at the Oregon State Prison in Salem, Oregon.

      Defendants move for summary judgment. Defs.' Mot. Summ. J., ECF No. 72. I GRANT the motion.

**BACKGROUND**

     Plaintiff alleges that (1) two defendants used excessive force on him; (2) now-retired Officer Goins stapled through a Christmas card sent to Plaintiff; (3) several defendants made

false charges against him; (4) Goins, Officer Rodney McNitt, and other defendants conspired to violate Plaintiff's right to equal protection; and (5) several defendants prevented Plaintiff from attending religious services. Plaintiff seeks money damages and injunctive relief. Because Plaintiff is representing himself, this court has sent Plaintiff an explanation of summary judgment procedures and the responsibilities of the non-moving party. ECF No. 78.

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment must show the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries its burden, the nonmoving party must go beyond the allegations in the pleadings and produce evidence that shows a genuine dispute of material fact for trial. *Id.*, 477 U.S. at 324. The nonmoving party cannot defeat summary judgment "with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

"[C]ourts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). In resolving a summary judgment motion brought against a pro se

inmate's claims, the court may consider factual statements "based on [the plaintiff's] personal knowledge, admissible in evidence, and attested to under penalty of perjury." *King v. Cnty. of Los Angeles*, 885 F.3d 548, 553 (9th Cir. 2018).

## II. Claims Under 42 U.S.C. § 1983

To establish a claim under § 1983, a plaintiff show that (1) a right secured by the Constitution or laws of the United States was violated and (2) the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 is not itself a source of substantive rights, but rather a way to vindicate federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

## DISCUSSION

## I. Failure to Exhaust Administrative Remedies

### A. Background

Defendants contend that Plaintiff failed to exhaust administrative remedies for his claims that (1) he was subjected to excessive force in November 2015 while being taken to the Disciplinary Segregation Unit (DSU), Pl.'s Ex., ECF No. 43, at 28-29; and (2) Defendant Goins stapled through a Christmas card in December 2015 in retaliation for Plaintiff's grievances, Am. Compl. 8, ECF No. 30. James Taylor, grievance coordinator for Snake River, reviewed all of the grievances Plaintiff submitted between 2015 and 2017 during his custody at Snake River. Taylor Decl. ¶ 5, ECF No. 73. Although Plaintiff submitted three grievances between November 2015 and January 2016, none concerned the alleged excessive force or the stapled Christmas card. Taylor Decl., Attachs. 5, 6, and 7. Under ODOC rules, Plaintiff had four weeks from the date of the alleged incidents to submit grievances. Taylor Decl. ¶¶ 21, 22.

### B. The Prison Litigation Reform Act's Exhaustion Requirement

State prisoners must exhaust any available administrative remedies before bringing an action in federal court challenging prison conditions. *Ross v. Blake*, ___ U.S. ____, 136 S. Ct. 1850, 1856 (2016) (citing the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a)). "Requiring exhaustion provides prison officials a 'fair opportunity to correct their own errors' and creates an administrative record for grievances that eventually become the subject of federal court complaints." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 (2006)).

The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). An inmate must complete any available administrative process that could address his complaint and provide some relief, even if the grievance process does not permit the relief the inmate seeks, such as money damages. *Porter,* 534 U.S. at 524. Courts may not create exceptions to the PLRA's mandatory exhaustion requirement. *See Ross*, 136 S. Ct. at 1857-58 (rejecting a judicially created "special circumstances" exception to the PLRA's exhaustion requirement).

A prisoner's failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). "Once the defendant has carried that burden, the prisoner has the burden . . . to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at 1172. "However, . . . the ultimate burden of proof remains with the defendant." *Id.*

## C. Applying the Exhaustion Requirement

Here, Defendants have met their initial burden of showing that Plaintiff failed to exhaust administrative remedies as to the two alleged incidents.  In response, Plaintiff argues he could not have grieved the alleged excessive force because ODOC's rules forbid grieving incidents that are subject to a separate internal department review or appeal process.  Pl.'s Opp'n 2, ECF No. 80.  Plaintiff relies on Oregon Administrative Rule (OAR) 291-109-0140(3)(b),[1] which provides that an inmate cannot grieve

> (b) Incidents or actions for which there exists a separate internal department appeal or review process as identified by an OAR for which an inmate may take part in; for example rejection or confiscation of mail, visiting, discrimination complaints, removal from an alternative incarceration program; classification issues, etc.  (*A use of force review, as described in OAR 291-013-0140, is not a separate appeal or review process for purposes of this rule.*)

OAR 291-109-0140(3)(b), *quoted in* Defs.' Mot. Summ. J. 2 (emphasis added), ECF No. 82.  Although this rule generally bars inmates from grieving incidents that are subject to a separate internal review process, it also creates a specific exception allowing inmates to grieve incidents that are subject to a use of force review.  OAR 291-109-0140(3)(b) therefore did not prevent Plaintiff from grieving the alleged excessive force.

Plaintiff's apparent misunderstanding of OAR 291-109-0140(3)(b) does not justify his failure to exhaust administrative remedies.  Even a "reasonable mistake about the meaning of a prison's grievance procedures" does not excuse an inmate from exhausting available remedies. *Ross*, 136 S. Ct. at 1858.

The Ninth Circuit has recognized that inmates are not required to exhaust an apparently available remedy "when the administrative scheme is 'so opaque that it becomes, practically

---

[1] This version of the rule was repealed in 2019.  The current version is found at OAR 291-109-0210, entitled Permissible Grievance Issues.  Plaintiff's opposition brief correctly quotes the applicable rule but incorrectly cites OAR "291-*013*-0140."  Pl.'s Opp'n 2 (emphasis added).

speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it.'" *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (per curiam) (quoting *Ross*, 136 S. Ct. at 1859). Here, however, the rule in question was sufficiently clear to be understood by an ordinary inmate.

Plaintiff also argues that "Defendant Taylor[2] must not have read this [rule], as he refused a grievance on this issue." Pl.'s Opp'n 2. But the refused grievance Plaintiff cites did not arise from alleged excessive force, but rather from Plaintiff's allegation that he was denied a religious activity because of a conduct order imposing a 24-hour cell-in. Pl.'s Ex., ECF No. 43-1, at 46. Taylor returned Plaintiff's grievance because conduct orders are not subject to grievances. Pl.'s Ex., ECF No. 43-1, at 45.

Plaintiff further contends that he is "not required to exhaust, when to do so would incurr further retalliation." Pl.'s Surreply 1[3] (original spelling), ECF No. 83. The "threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). The Ninth Circuit explained,

> To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance. If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable. That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.

*Id.*

Here, Plaintiff submitted multiple grievances while in custody at Snake River. Taylor Decl., Attach. 4. After being transferred from the Two Rivers Correctional Institution to Snake

---

[2] As Defendants note, Plaintiff does not name Taylor as a defendant in his Amended Complaint. Defs.' Reply 3 n.2.
[3] Because Plaintiff is representing himself, I consider his surreply although he did not receive this court's permission to file it.

River in August 2015, Plaintiff submitted six grievances during the remainder of 2015. Taylor Decl., Attach. 1, at 2. During 2016 and 2017, Plaintiff submitted about twenty grievances each year. Taylor Decl., Attach. 4, at 3-5. Plaintiff's submission of more than forty grievances at Snake River between 2015 and 2017 shows that the alleged threat of retaliation would not have deterred him from filing grievances about the two alleged incidents in late 2015. I conclude Plaintiff has not shown that the alleged threat of retaliation would have deterred a reasonable prisoner of ordinary firmness from submitting a grievance.

Plaintiff failed to exhaust the available administrative remedies as to his claims for excessive force and for the alleged stapling of a Christmas card. I dismiss these claims without prejudice. *See Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (dismissal for failure to exhaust remedies must be without prejudice).

## II. Due Process Claims

Plaintiff brings claims for violations of his procedural due process rights under the Fourteenth Amendment. I conclude that Plaintiff's procedural due process claims fail because he has not shown that he had a protected liberty interest.

### A. Background

While Plaintiff was in custody at Snake River from 2015 to 2017, he was disciplined for possessing contraband, being in unauthorized areas, leaving his housing unit without permission, misusing legal paper, violating orders not to take pens to Bible study, and other misconduct. McNitt Decl. ¶¶ 7-10, 12-13, 16, 21, 25, 28, 32, 36, 38-39; Goins Decl. ¶ 7; Capps Decl. ¶¶ 6, 9. Plaintiff received two types of citations: conduct orders and misconduct reports. OAR 291-105-0021. Conduct orders are issued for relatively minor infractions, with possible sanctions including a "reprimand, warning and counseling, and as authorized by the functional unit

manager or officer-in-charge, loss of leisure activities conduct order . . . for not more than 72 hours."  OAR 291-105-0021(1).  While an inmate is on loss of privileges, the inmate may attend meals, callouts, work assignments, and assigned classes or training.  Parks Decl. ¶ 3.  Here, Plaintiff was sanctioned with several 12- to 72-hour "cell-ins."  E.g., McNitt Decl., Attach. 4, at 1 (24-hour cell-in imposed because Plaintiff disobeyed an order to return to his unit); McNitt Decl., Attach. 13, at 1 (12-hour cell-in imposed because Plaintiff violated an order to write a report on his behavior).

For more serious violations, Plaintiff received misconduct reports.  OAR 291-105-0021(2).  Inmates may grieve misconduct reports, receive a hearing where they may present evidence and argue their case, and then seek administrative review of the hearing officer's decision.  Here, Plaintiff received sanctions of 7 days in DSU in November 2015; 10 days in DSU (suspended) and 10 days' loss of privileges in March 2016; and 14 days in DSU, 7 days' loss of privileges, and a suspended $25 fine in April 2016.  Capps Decl. & Attachs., ECF No. 76.

## B.  Legal Standards

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  To prove a violation of procedural due process rights, a plaintiff must show (1) deprivation of a protected liberty or property interest and (2) denial of adequate procedural protections.  *Hufford v. McEnaney,* 249 F.3d 1142, 1150 (9th Cir. 2001).  Here, Plaintiff has not shown a deprivation of a protected liberty or property interest.[4]

Legally incarcerated persons "retain only a narrow range of protected liberty interests."  *Chappell v. Mandeville*, 706 F.3d 1052, 1062-63 (9th Cir. 2013) (quotation marks and

---

[4] I note that Plaintiff received a $25 suspended fine, but the fine was apparently never imposed, so no protected property interest was created.  *Cf. Quick v. Jones,* 754 F.2d 1521, 1523 (9th Cir. 1984) (prison officials must provide due process before forfeiting funds in an inmate's account).

citation omitted).  A change in the conditions of confinement may create a protected liberty interest only if the changed condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To determine whether a condition of confinement imposes an atypical and significant hardship, the court examines "'1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.'" *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014) (quoting *Ramirez v. Galaza,* 334 F.3d 850, 861 (9th Cir. 2003) (citations omitted by *Brown*)).  The court examines the circumstances of each case, "rather than invoking a single standard." *Chappell*, 706 F.3d at 1064 (inquiry is "context-dependent" and requires "fact by fact consideration") (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)).

Here, the 12- to 72-hour cell-ins and loss of privileges Plaintiff received are not atypical or significant enough to create a protected liberty interest.  *See, e.g., Maisano v. Daniels*, 87 F.3d 1320 (table), 1996 WL 341274, at *2 (9th Cir. June 19, 1996) ("Because Maisano was sanctioned with loss of privileges for thirty days, he had no protected liberty interest in due process.").  Nor do Plaintiff's placements in DSU for up to 14 days create a protected liberty interest.  Custody in DSU, standing alone, does not satisfy the significant and atypical hardship requirement.  *See Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1316 (9th Cir.) ("administrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence"), *amended on other grounds*, 75 F.3d 448 (9th Cir. 1995); *Sandin*, 515 U.S. at 487 (inmate had no liberty interest in being free from 30 days in

disciplinary segregation); *cf. Brown*, 751 F.3d at 988 (prisoner had shown protected liberty interest when he was held for 27 months in segregated housing without meaningful review).

However, confinement to segregated housing for even a relatively short time may create a protected liberty interest if the conditions of confinement are atypical and severe. For example, a disabled inmate showed a protected liberty interest because he was confined without a wheelchair to a segregated housing unit for 25 days. *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003) ("Serrano's disability—coupled with administrative segregation in an SHU that was not designed for disabled persons—gives rise to a protected liberty interest. That is, the conditions imposed on Serrano in the SHU, by virtue of his disability, constituted an atypical and significant hardship on him."). Here, Plaintiff has not presented evidence that he was subjected to severe or atypical conditions while he was in DSU.

Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment procedural due process claims because he has not shown a protected liberty interest. Even if Plaintiff had shown a protected liberty interest, the record shows as a matter of law that he received sufficient due process.

## III. First Amendment Freedom of Religion Claims

Plaintiff claims that Defendants violated his First Amendment right to freedom of religion by prohibiting him from bringing a pen to religious services, and by preventing him from attending religious call outs.

### A. Background

On November 1, 2015, Defendant McNitt gave Plaintiff an oral warning not to take an ink pen to bible study. McNitt Decl. ¶ 10. Plaintiff returned to his cell, and showed McNitt a page from "draft handbook that was under review by Security," indicating that inmates were

allowed to take pens to religious classes.  McNitt Decl. ¶ 11.  In his exhibits, Plaintiff submits

the page from an Inmate Orientation Packet dated November 2014, stating that pens and pencils

"necessary for participation in assigned educational programs, Religious Services or other

program services functions, will be authorized."  Pl.'s Ex., ECF No. 43 at 40.  However, as

discussed below, until March 28, 2016, inmates were not allowed to take pens to callouts.

McNitt Decl., Attach. 8.

On January 11, 2016, Plaintiff again attempted to take a pen to a chapel callout.  McNitt

states Plaintiff had been "told on several occasions by myself and other staff that he could not

take an ink pen to his religious services callout.  [Plaintiff] repeatedly attempted to take an ink

pen to his religious services call out and did not agree with my explanation that it was

unauthorized."  McNitt Decl. ¶ 22.   McNitt issued a conduct order, requiring Plaintiff to cell-in

for 24 hours based on disobedience of an order and possession of contraband (the pen).  McNitt

Decl. ¶ 20.

On March 3, 2016, Plaintiff again attempted to take a pen to a religious callout.  McNitt

Decl. ¶ 25.  McNitt issued a conduct order requiring Plaintiff to remain in his cell for 72 hours.

He also ordered Plaintiff to write a one-page apology letter and a report describing his "problem

behavior" by March 6, 2016.  McNitt Decl., Attach. 9; Capps Decl., Attach. 4, at 4.

As of March 7, 2016, McNitt had not received an apology letter.  When McNitt asked

Plaintiff where the letter was, Plaintiff did not respond.  Capps Decl., Attach. 4, at 4.  McNitt

sent Plaintiff back to his cell to complete the letter.  Plaintiff then asked to speak to Lieutenant

Cleaver, who told Plaintiff that he must comply with McNitt's valid order.  Capps Decl., Attach.

4, at 1.  However, as of March 8, McNitt "still had not received an apology letter and issued

[Plaintiff] a misconduct report for Disobedience of an Order II."  Capps Decl. ¶ 12.

On March 10, 2016, Capps presided over a hearing on the misconduct report. Plaintiff "stated he did not believe the order not to take an ink pen to Chapel callouts was valid and cited a portion of the November 2014 handbook that stated ink pens were authorized in the Chapel." Capps Decl. ¶ 13. Plaintiff stated that he had completed the apology letter but that McNitt "had not come to get it." *Id.* During the hearing, Capps asked a Snake River chaplain whether inmates were allowed to bring ink pens to chapel, and the chaplain responded that he was aware that Snake River officials were considering the issue. Capps Decl. ¶ 14. Capps recessed the hearing to determine the current status of the decision. Billie Atteberry, an assistant to Captain Gilbert Rodriguez, "responded that security had not yet authorized ink pens to be taken to Chapel, and that they were aware of the type of documentation [Plaintiff] had stating ink pens were authorized. However, at the time ink pens were not authorized and the matter was being reviewed." Capps Decl. ¶ 15.

Capps reopened the hearing and preliminarily found that Plaintiff had committed Disobedience of an Order III, a minor violation. Capps Decl. ¶ 16. Capps instructed Plaintiff to give his apology letter to McNitt for review, and Capps would then make his final determination.

Plaintiff retrieved the letter from his cell, wrote two additional comments,[5] and then gave the documents to McNitt. Plaintiff's letter was not an apology but rather a complaint against McNitt. Capps Decl. ¶ 17. Plaintiff admitted that he "never intended to apologize" to McNitt. Pl.'s Ex., ECF No. 43-1, at 1. After reopening the hearing, Capps found that because of Plaintiff's "now apparent disregard of, and lack of remorse, for violating a valid order and his attempt to deceive the hearings officer through his attempt to conceal the original apology

---

[5] Plaintiff wrote, "My behavior sucks," and "I acknowledge that I disobeyed your order. Sorry." Capps Decl., Attach. 4, at 2.

letter," he would change his preliminary ruling and cite Plaintiff for a major rule violation, Disobedience of an Order II.  Capps Decl., Attach. 4, at 2.

Based on the evidence, Capps found that Plaintiff could have complied with McNitt's directive but instead chose to violate it.  "The issue of whether it was authorized in the past to take a pen to the chapel became irrelevant as it was now clear and had been explained to inmate Carter that it was currently not authorized."  Capps Decl., Attach. 4, at 2.  Capps recommended ten days' loss of privileges and a suspended sanction of ten days in DSU, which the Superintendent approved.  Capps Decl. ¶ 18.

### B.  Legal Standards

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  U.S. Const. amend I. Inmates "retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  But "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Id.* (internal quotation marks and citation omitted).

To establish a First Amendment free exercise claim, an inmate must show that prison officials burdened the exercise of a sincerely held religious belief.  *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  The government's conduct must do more than "inconvenience" an inmate's religious exercise; the conduct "must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015).

In determining whether a regulation impinges on a prisoner's religious expression, the court examines the factors in *Turner v. Safley,* 482 U.S. 78 (1987). *See O'Lone,* 482 U.S. at 349; *Shakur,* 514 F.3d at 884. The *Turner* factors are (1) "a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner,* 482 U.S. at 89-91.

The court determines whether the state has shown a "reasonable" relation between the policy and legitimate penological objectives, rather than only a "logical" one. *Beard v. Banks*, 548 U.S. 521, 533 (2006); *Turner,* 482 U.S. at 89 ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"). The Supreme Court has cautioned that "courts should ordinarily defer to [prison officials'] expert judgment" on security issues. *Turner*, 482 U.S. at 86 (citation and quotation marks omitted). Prison officials, not courts, must "make the difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89.

## C. Discussion

Here, Plaintiff contends that Snake River's sanctions for taking a pen to religious callouts were "bogus," based on his claim that Snake River rules did permit pens at callouts. Pltf.'s Opp'n 4. But Plaintiff has not alleged a *religious* belief in bringing pens to religious callouts, rather than a preference based on his own interpretation of prison rules. Even if Plaintiff did present evidence that he had a sincerely held religious belief in bringing pens to religious callouts, Defendants have shown (1) a rational connection between the restriction on pens and

disciplining inmates for violating rules against carrying contraband; (2) Plaintiff was not denied all means of religious expression because he could attend religious callouts without a pen; (3) allowing inmates to bring contraband to unauthorized areas would undermine prison safety; and (4) no ready alternative exists to the rules against inmates carrying contraband in unauthorized areas. Snake River's later decision to allow inmates to bring pens to religious callouts does not show that the prior prohibition on pens violated Plaintiff's First Amendment rights. I conclude that Plaintiff has not shown a violation of his First Amendment rights based on the discipline he received for attempting to take a pen to religious callouts.

Plaintiff also argues that Defendants deprived him of his right to attend religious callouts while he was sanctioned with loss of privileges. Under ODOC rules, inmates sanctioned with loss of privileges are "allowed to attend one denominational worship service of [their] choice each week." Parks Decl. ¶ 5.

Plaintiff has not presented evidence that he was improperly denied the one religious service per week allowed on loss of privileges. Snake River officials distinguish "religious services," which inmates may attend while on loss of privileges, from "religious activity callouts," which inmates may not attend while on loss of privileges. Pl.'s Ex., ECF No. 43-1, at 15. In a response to a grievance appeal filed by Plaintiff, J. Gilmore, assistant superintendent at Snake River, stated that "[w]hile you may be allowed to attend a service, you are not authorized to attend a religious activity callout while serving a conduct order. A conduct order has a limited duration [no more than 72 hours] that still allows for a person to attend a religious service during the rest of the week." *Id.* I conclude that Plaintiff has not shown that he prevented from attending a religious service, as opposed to a religious callout, while he was on loss of privileges.

Plaintiff also claimed that he was denied all religious callouts while sanctioned with loss of privileges for one week. Pl.'s Ex. 1, ECF No. 43-1, at 60-61. Steve Frank, Eastside Institutions Administrator, rejected Plaintiff's grievance on this issue, stating that Snake River records showed Plaintiff was "signed up for and attended two (2) religious services during the week [he] alleged [he was] improperly denied access." *Id.* at 62. I conclude that Defendants are entitled to summary judgment on Plaintiff's claim under the First Amendment right to freedom of religion.

## IV. Claim for Conspiracy to Violate Right to Equal Protection

Plaintiff claims that Defendants conspired to deny him his rights to equal protection. The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). Conclusory allegations of discrimination are insufficient unless supported by facts that may prove invidious discriminatory intent or purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam). Here, Plaintiff has not presented evidence that he is a member of any protected class.

Alternatively, a plaintiff may bring an equal protection claim based "on unique treatment rather than on a classification," which "the Supreme Court has described . . . as a 'class of one' claim." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [defendant] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *N. Pacifica,* 526 F.3d at 486. To establish a claim of conspiracy under § 1983, a plaintiff must submit facts with sufficient particularity to "show an agreement among the alleged conspirators to deprive the party of his or her civil rights." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998).

Here, Plaintiff has not presented evidence that he was intentionally treated differently from similarly situated inmates. Even if Plaintiff had evidence that Defendants intentionally treated him differently from similarly situated inmates, he has failed to show Defendants lacked a rational basis for the difference in treatment. *See Vill. of Willowbrook*, 528 U.S. at 564. The record shows Plaintiff was sanctioned because of his misconduct, such as his repeated defiance of orders not to take a pen to religious callouts. I conclude that Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

## V. Retaliation Claims

Plaintiff claims Defendants conspired to retaliate against him. I conclude Plaintiff has failed to present sufficient evidence to show a disputed issue of material fact on his retaliation claim.

### A. Background

Plaintiff contends that the conduct orders and misconduct reports are evidence of a conspiracy among the Snake River officials to retaliate against him, a conspiracy originally instigated by Defendant McNitt. Plaintiff cites an incident that occurred on September 30, 2015, a few weeks after Plaintiff's transfer from the Two Rivers Correctional Institution. McNitt

stopped Plaintiff in the recreation yard and confiscated a book from him. McNitt states that Plaintiff told him it "was a library book but it had no markings on it to indicate it was a library book. It did contain the name of another inmate." McNitt Decl. ¶ 8. McNitt issued a conduct order for disobedience, false information to staff, and contraband, and recommended a 72-hour cell-in, which was approved by a sergeant. McNitt Decl., Attach. 2, at 1.

About two weeks later, the book was returned to Plaintiff, who later thanked grievance coordinator Taylor for the return of the book and an enclosed bookmark with sentimental value.[6] Pl.'s Ex., ECF No. 43, at 27. Plaintiff noted that Taylor had "nullified the misconduct order" issued by McNitt. Am. Compl. 12.

Plaintiff then filed a grievance, claiming that McNitt had called him "a [liar] and a thief." Pl. Ex., ECF No. 43, at 9. Plaintiff's grievance and grievance appeal were denied. Assistant Superintendent J. Gilmore stated that there was "no evidence to substantiate that Officer McNitt called you a liar and a thief." Pl.'s Ex., ECF No. 43, at 23.

After the September 30, 2015, book incident, Plaintiff contended that any subsequent discipline showed an "unwritten policy of conspiracy to [retaliate], as evidenced by all the conduct orders (5) and [two] misconduct majors I've [received] since I grieved [McNitt] on 9/30/15." Pls.' Ex., ECF No. 43-1, at 1. Similarly, when Lieutenant Cleaver ordered Plaintiff to write a report about his "problem behavior" after he had received two 72-hour and two 24-hour cell-ins during the previous week, Plaintiff produced a report that "did not acknowledge any of his disobedience of orders." Pl.'s Ex., ECF No. 43-1, at 43. Plaintiff instead complained that he was "obviously" being retaliated against, "even a retard could recognize it." Capps Decl., Attach 5, at 1. Cleaver told Plaintiff that the report "was unacceptable and needed to be rewritten about

---

[6] In contradiction to the note Plaintiff wrote to Taylor on November 15, 2015, thanking Taylor for the return of the book and the bookmark, Plaintiff now alleges that the bookmark "was confiscated and never returned." Am. Compl. 12.

his problem behavior," rather than "accusing staff of misconduct."  Pl.'s Ex., ECF No. 43-1, at

43.  Plaintiff agreed to write a second report, but Capps found that the second report "again only

discussed how he feels he is retaliated against."  Capps Decl., Attach. 5, at 1.

### B.  Legal Standards to Prove Retaliation

A claim for retaliation has five elements.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th

Cir. 2012).  First, a plaintiff must allege that he engaged in protected activity.  *Id.*  Protected

activity includes conduct such as filing a grievance.  *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th

Cir. 2005).  Second, the plaintiff must show that the defendant took adverse action against

him.  *Watison*, 668 F.3d at 1114.  "Third, the plaintiff must allege a causal connection between

the adverse action and the protected conduct."  *Id.*  In other words, the plaintiff must present

evidence that the defendant subjected him to an adverse action *because of* his engagement in

protected activity.  *Rhodes*, 408 F.3d at 567.  "Fourth, the plaintiff must allege that the official's

acts would chill or silence a person of ordinary firmness from future [protected]

activities."  *Watison*, 668 F.3d at 1114 (internal quotation marks and citation omitted).  Finally,

the plaintiff must show that the defendants' alleged retaliation "did not advance legitimate goals

of the correctional institution . . . .'"  *Watison,* 668 F.3d at 1114 (quoting *Rizzo v. Rowland*, 778

F.2d 527, 532 (9th Cir. 1985)).  In short, the inmate must present evidence that he was retaliated

against for exercising his constitutional rights and that the retaliatory action advanced no

legitimate penological interest.  *See Hines v. Gomez,* 108 F.3d 265, 267 (9th Cir.1997); *Pratt v.

Rowland,* 65 F.3d 802, 806 (9th Cir. 1995) (prisoner must plead and prove "the absence of

legitimate correctional goals for the conduct of which he complains").

## C. Discussion

Plaintiff's retaliation claim fails because he has not shown that Defendants lacked legitimate penological goals for their actions. Plaintiff's theory is that almost every disciplinary action taken against him after September 30, 2015, was retaliatory, but the record does not support this. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'") (citation omitted). Defendants sanctioned Plaintiff because he repeatedly defied orders and disrespected staff. As the Fourth Circuit has explained,

> Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct. The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.

*Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Here, the record shows that the sanctions Plaintiff received were based on Defendants' legitimate policies, such as insuring compliance with staff orders. Defendants are entitled to summary judgment on the retaliation claim.

## VI. Plaintiff's Claims Against Defendants Who Lack Personal Involvement

Defendants argue that Plaintiff has failed to sufficiently allege the basis for his claims against Institutions Administrator Nooth; Security Manager McLay; Captains Parks and Rodriguez; Lieutenants (Lts.) Jantz, Sundquist, and Claus; Sergeants (Sgts.) Nguyen, Whitley, Brown, and Lande; and Officers Herrera and Park. I agree that Plaintiff's claims against these defendants fail to allege, other than in conclusory fashion, the way in which each defendant was personally involved in the alleged violations of his civil rights.

A government official is not liable under § 1983 unless the official's own actions caused the alleged constitutional deprivation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th

Cir. 2012). A plaintiff's allegations "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted). Furthermore, a supervising official "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). An official may be liable as a supervisor only if (1) the official was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists "between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation and quotation marks omitted).

Applying these standards here, I conclude that Plaintiff relies on conclusory allegations against these Defendants. In *Iqbal*, the Court rejected the argument that a "supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." 556 U.S. at 677. Defendant Nooth, as Snake River administrator, is not liable for allegedly "signing off on" conduct orders and disciplinary hearings. A defendant "cannot be held liable under § 1983 for denying [an inmate's] appeal." *Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (citing *Ramirez*, 334 F.3d at 860).

As to the other defendants named above, Plaintiff has not submitted specific evidence to show disputed issues of material fact. I therefore grant Defendants' motion for summary judgment as to Nooth, Parks, Rodriguez, McLay, Jantz, Sundquist, Nguyen, Whitley, Brown, Lande, Claus, and Park.

/ / /

/ / /

/ / /

**CONCLUSION**

Defendants' Motion for Summary Judgment is GRANTED without prejudice as to Plaintiff's two non-exhausted claims, and is GRANTED with prejudice as to the remaining claims. Any pending motions are denied as moot.

IT IS SO ORDERED.

DATED June 1, 2020.

/s/ Robert E. Jones
Robert E. Jones
United States District Judge